IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAKI RAGLAND, | ) | CASE NO. 5:12-cv-02526 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| TERRY TIBBALS, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Maki Ragland ("Petitioner" or "Ragland"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1.  Respondent filed a Return of Writ.  Doc. 10. Petitioner has failed to file a Traverse.

Ragland challenges the constitutionality of his conviction and sentence in *State v. Ragland*, Case No. 2009CR1028B (Stark County).  Doc. 1.  Following a jury trial,[1] Ragland was convicted of and sentenced on one count of murder, one count of aggravated burglary, four counts of aggravated robbery, one count of felonious assault, and one count of having weapons while under disability.[2]  Doc. 10-1, pp. 1-9, 56-63, 131.  The trial court sentenced Ragland to a total prison term of 58 years to life.  Doc. 10-1, pp. 62, 137.

---

[1] All counts, except Count Eight (having weapons while under disability) were tried to the jury.  Doc. 10-1, pp. 52, 131.  Count Eight was tried to the Court.  Doc. 10-1, pp. 52-55.  Page number references refer to the page number for the cited ECF Doc.

[2] Counts One through Seven included firearm specifications.  Doc. 10-1, pp. 1-9, 56-63, 131.

1

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. For the reasons set forth below, the undersigned recommends that Ragland's Petition (Doc. 1) be **DISMISSED in part and DENIED in part**.[3]

## I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Ragland's conviction as follows:

> {¶ 4} In July of 2009, Daniel Sankey was living at a house on 14th Street, N.E. in the City of Canton along with his daughter, Danielle, and her daughter, [  ],[4] who was two years old. On July 2, 2009, Daniel Sankey, Danielle Sankey, H, Marlo Morales, who is Daniel Sankey's girlfriend, and Jason Nelson, who is Danielle's friend, were at the address. Daniel Sankey was in the process of changing his tracheotomy and was about to play a game of dominos when someone came to the door. Daniel Sankey testified that he was expecting a friend to come by with a video disc recorder. According to Daniel Sankey, when he asked who was at the door, "someone hollered out Nardo, which is Ms. Morales' son." Transcript at 166. Marlo Morales told appellant that it could not be her son because he had just called her and told her he was leaving town and going back to Akron.

> {¶ 5} When Morales opened the door, she let the two black males at the door, who were wearing hoodies, into the house under the belief that Daniel Sankey was waiting for them. While one of the men remained in the front of the house, the other approached Daniel Sankey, who was sitting at a table. Sankey testified that he did not pay much attention to the man because he thought it was the person who was bringing the video to him. The following testimony was adduced when Sankey was asked what the man said to him:

> {¶ 6} "A. Well, first he said what's up. I said hey, what's up, still not looking at him. And he said something like—trying to be precise word for word. What's up. He was like well, you know what this is. I said what is this, you know. And then

---

[3] The undersigned recommends dismissal of the grounds in the petition that are not cognizable in federal habeas review and denial of the grounds in the petition that on review are without merit.

[4] The name of the minor child has been redacted herein and the minor child will be referred to as "H." *See* Local Rule 8.1(a)(2).

he proceeded to say something else and I thought he was playing a game, joking around because I thought it was the person I was looking for, and he said I think you need to get up.

{¶ 7} "Q. Now, before you said that did you see anything on him?

{¶ 8} "A. When he said I think you need to get up he nudged me with a gun.

{¶ 9} "Q. What did the gun look like?

{¶ 10} "A. It was long, had the round barrel, had the holes in it and dark in color, but it still looked like it could be a toy to me. And then I said how long are you going to carry this game, play this game? I'm still thinking he is playing around not serious because he wasn't real aggressive with what his demand was. So I am not thinking it's a robbery." Transcript at 170–171.

{¶ 11} After the man hit Sankey in the head with the gun, Sankey jumped up and the man stepped back and shot Sankey.

{¶ 12} At the time Daniel Sankey was shot, H, his granddaughter, had just walked past him heading towards a bedroom. Daniel Sankey testified that after the man shot him, the two men went towards the front door as if they were leaving. Sankey then stepped into the bedroom, closed the door and told Marla Morales to grab H so that they could leave. At the time, Sankey did not see anything wrong with H, who had asked Morales to pick her up. After fleeing his house via a side door off of his bedroom, Sankey, who did not realize that he had been shot in the leg and who was bleeding heavily from a head wound, went to a neighbor's house. The neighbor called 911.

{¶ 13} At trial, Daniel Sankey testified that when he went outside of his neighbor's house, he saw his daughter, Danielle, walking around hysterically and saw Marlo Morales in a bloody shirt. Sankey then learned that H had been hit and was being taken to the hospital. H later died. Sankey received stitches for his head injury and was treated for the gunshot wound to his leg.

{¶ 14} At trial Danielle Sankey testified she was sitting on the couch watching a movie with Jason Nelson in the living room when there was a knock on the door. According to Danielle, the person at the door said their name was Nardo. The following testimony was adduced when Danielle Sankey was asked whether she heard anything going on in the kitchen or the dining room area:

{¶ 15} "A. I heard my dad say what do you want, what are you here for. And the guy said you know what I am here for. Quit playing around. My dad is like I don't know what you are talking about. And then I heard some scuffles and I heard a gunshot. I heard Marlo yell heard the baby.

{¶ 16} "Q. Back you up for a second. After you heard a gunshot, that would be the first one, did anything—did you see anyone come into the living room?

{¶ 17} "A. After I heard the gunshot a few minutes later he was coming out. The first guy had left after the shooting had started. And then I heard another gunshot and the shell from the second gunshot gun came into the living room. So I seen the shell to the second gunshot. And then he stopped in the living room before he left out and asked us if we had anything, if we had anything to give him. I think he was talking mostly to Jason. I didn't see his face or anything, then he left." Transcript at 236–237. The man left after the two had nothing to give him.

{¶ 18} Marlo Morales, Daniel Sankey's girlfriend, testified that on June 16, 2009, she had celebrated her daughter Regina's birthday at Daniel Sankey's house. At the time, Regina was dating Isaiah Thomas who brought a man known as "Beans" with him to the party. Morales testified that, on July 2, 2009, her son Renaldo had been at Daniel Sankey's house but had left. After he left, they were getting ready to play dominos and Morales was smoking marijuana when someone came to the door. Morales, who testified that she did not hear the person at the door identify himself, opened the door after Daniel Sankey told her that "Nardo" was at the door. Morales testified that she opened the door and then walked away and never looked to see whether Nardo was at the door. She indicated that she could not say how many people came into the house because she was not paying attention and was going to turn music on in a bedroom. Morales later became concerned when she noticed that the two men had their hoodies on and that one had a gun. Morales testified that, at some point, she recognized the man who did not have a gun and who was standing by the door. The following testimony was adduced when she was asked how she recognized him:

{¶ 19} "A. The gentleman that was wearing the peanut butter coat told him to go to the bedroom and he came into the bedroom. When he stepped into the bedroom there is a landing there as you are coming in. He wasn't paying attention to it and he slipped and that mirror that sits right there by the door, his hoody slid off and at that point I seen his face and knew who he was.

{¶ 20} "Q. Who did you know him to be?

{¶ 21} "A. Beans.

{¶ 22} "Q. When you noticed it was Beans did that cause you to do anything?

{¶ 23} "A. Made me more nervous." Transcript at 305.

{¶ 24} Morales also testified that when she picked up H while in the bedroom, she did not notice anything wrong with her. She testified that while she was in the bedroom, the man who had fired the gun approached her and asked her where Daniel Sankey had gone. The same man subsequently asked her "where the shit at." Transcript at 309. Morales then told the man that she did not know what he

4

was talking about. According to Morales, the man took items off of a table and took $27.00 out of her pocket. The man then left the house.

{¶ 25} Shortly after the incident, Morales went to the police station where she gave a statement to the police and also picked "Beans" aka William Ferguson out of a photo array. She also picked appellant out of another array and identified him as the shooter. Daniel Sankey, Danielle Sankey and Jason Nelson were unable to pick anyone out of the photo arrays.

{¶ 26} William Ferguson testified at appellant's trial. Ferguson testified that he had pleaded guilty to complicity to aggravated robbery, complicity to aggravated assault, felonious assault and complicity to aggravated burglary and to three firearm specifications and that he had agreed to testify against appellant in exchange for a nine year sentence. Ferguson testified that he had met Marlo Morales at Daniel Sankey's house approximately four or five months before the incident in this case either to purchase marijuana or because he was with someone who was purchasing marijuana. He testified that at such time, Regina Morales' birthday was celebrated.

{¶ 27} Ferguson testified that, on July 2, 2009, he met Isaiah Thomas earlier in the day. The two were near Aultman Hospital when Ferguson's car overheated. Ferguson and Thomas then met up with appellant who, at the time, had a nine millimeter gun on him. The three later went to a house on Walnut N.E. where they smoked marijuana and fired a gun out of the back of a building. After their attempt to purchase marijuana at another location was unsuccessful, they went to the Sankey home in an attempt to purchase marijuana.

{¶ 28} Ferguson testified that appellant, after one of them knocked on the Sankey door, identified himself as "Nardo." After the shooting, Ferguson fled to Elyria but then turned himself in on July 3, 2009, after he heard that a little girl had died. At police headquarters, Ferguson gave a statement to police and picked appellant out of a photo array. Ferguson also told the police that the shooter was "Ragland." Transcript at 275.

Doc. 10-1, pp. 129-153 (Fifth District Ohio Court of Appeals Judgment Entry, Case No.

2010CA00023); *See also State v. Ragland*, 2011 WL 1848902, *1-4 (Ohio App. May 9, 2011).[5]

## II.        Procedural Background

**A.        State Conviction and Sentencing**

On August 27, 2009, the Stark County Grand Jury indicted Ragland on eight counts: one

count of Murder (O.R.C. 2903.02(B)); one count of Aggravated Burglary (O.R.C. 2911.11(A)(1)

---

[5] The facts summarized herein are taken from *State v. Ragland*, 2011 WL 1848902, *1-4 (Ohio App. May 9, 2011).

or (A)(2); four counts of Aggravated Robbery (O.R.C. 2911.01(A)(1) or (A)(3)); one count of Felonious Assault (O.R.C. 2903.11(A)(1) or (A)(2)); and one count of Having Weapons While Under Disability (O.R.C. 2923.13(A)(2) or (A)(3)).  Doc. 10-1, pp. 1-6.  All counts, with the exception of Having Weapons While Under Disability, included firearm specifications.  Doc. 10-1, pp. 1-6.  Ragland plead not guilty.  Doc. 10-1, pp. 56-57.

Prior to trial, on November 5, 2009, Ragland filed a motion to suppress evidence and statements made at the time of his arrest (Doc. 10-1, pp. 10-18) and, on November 24, 2009, Ragland filed a motion to suppress identification (Doc. 10-1, pp. 19-21).  The State filed responses to Ragland's motions to suppress.  Doc. 10-1, pp. 22-32.  Ragland filed a supplement to his motion to suppress identification (Doc. 10-1, p. 33), which the State responded to (Doc. 10-1, pp. 34-35).  On December 7, 2009, the trial court denied Ragland's motions to suppress.  Doc. 10-1, pp. 36-37.

On November 25, 2009, Ragland filed a motion to sever Count Eight, Having Weapons While Under Disability, with a request to have that count tried to the court.  Doc. 10-1, pp. 38-39.  The State opposed Ragland's motion to sever.  Doc. 10-1, pp. 40-51.  The trial court granted Ragland's motion to sever and his request to try Count Eight to the court.  Doc. 10-1, p. 52.

Ragland's case proceeded to jury trial on all but Count Eight and on, December 18, 2009, the jury returned a verdict of guilty on all counts.  Doc. 10-1, pp. 56-57.  The trial court found Ragland guilty on Count Eight, Having Weapons While Under Disability.  Doc. 10-1, pp. 53-55, 57.  On January 22, 2010,[6] the trial court sentenced Ragland to a total prison term of 58 years to life imprisonment.  Doc. 10-1, pp. 56-63.

---

[6] January 22, 2010, is the date the sentencing judgment entry was filed with the court.  Doc. 10-1, pp. 56, 64.

**B.      Direct appeal**

On February 3, 2010, through counsel, Ragland filed a Notice of Appeal from his

conviction and sentence with the Fifth District Ohio Court of Appeals.  Doc. 10-1, p. 64.  In his

appellate brief (Doc. 10-1, pp. 65-111), Ragland raised three assignments of error:

1.  The evidence at trial was insufficient to support a conviction, and the jury's verdict was against the manifest weight of the evidence.

2.  The trial court plainly erred in imposing maximum prison terms for appellant's separate convictions.

3.  The trial court committed plain error when it entered a judgment of conviction and sentenced the appellant on allied offenses of similar import in violation of O.R.C. 2941.25 and also in violation of the state and federal prohibitions against the imposition of multiple punishments as set forth in the double jeopardy clause, in addition to failing to satisfy the statutory requirements for imposing consecutive sentences.

Doc. 10-1, pp. 74-80.  On October 4, 2010, the State filed its Brief.  Doc. 10-1, pp. 112-128.  On

May 9, 2011, the Fifth District Ohio Court of Appeals affirmed the judgment of the trial court.

Doc. 10-1, pp. 129-153.

On June 22, 2011, Ragland, acting *pro se*, filed a Notice of Appeal with the Ohio

Supreme Court.  Doc. 10-1, pp. 154-155.  In his Memorandum in Support of Jurisdiction (Doc.

10-1, pp. 156-198), Ragland raised the following three propositions of law:

1.  The evidence at trial was insufficient to support a conviction, and the jury's verdict was against the manifest weight of the evidence.

2.  The trial court plainly erred in imposing maximum prison terms for appellant's separate convictions.

3.  The trial court committed plain error when it entered a judgment of conviction and sentenced the appellant on allied offenses of similar import in violation of O.R.C. 2941.25 and also in violation of the state and federal prohibitions against the imposition of multiple punishments as set forth in the double

jeopardy clause, in addition to failing to satisfy the statutory requirements for imposing consecutive sentences.

Doc. 10-1, pp. 166-172.  On July 21, 2011, the State filed its Memorandum in Response.  Doc. 10-1, pp. 199-216.  On October 5, 2011, the Ohio Supreme Court denied Ragland leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Doc. 10-1, p. 217.

## C.    Federal Habeas Corpus

On October 10, 2012, Ragland, acting *pro se*, filed his Petition asserting three grounds for relief that are set forth and discussed below in Section III.B.  Doc. 1.  On January 14, 2013, Respondent filed a Return of Writ.  Doc. 10.  Petitioner has not filed a Traverse.

## III.    Law and Analysis

## A.    Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.[7] *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[7] The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations has not been raised as an issue in this case.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.**     **Grounds for Relief**

**1.  Ground One**

**Ground One:** The evidence at trial was insufficient to support the conviction, and the jury verdicts were against the manifest weight of the evidence, in violation to the Ohio and United States Constitutions respectively.

**<u>Supporting Facts</u>:** The charge of Burglary requires a showing that the petitioner committed a trespass.  The evidence does not indicate that either individual entering the residence identified themselves as one of the victims son.  Further the one victim opened the door, and invited them into the residence.  There is no indication that anyone requested that the two alleged trespassers to leave, any criminal activity occurring after the entry was separate and distinct from the entry itself.

Doc. 1, p. 5.

**a.  Insufficiency of evidence claim**

In the Ohio Court of Appeals (Doc. 10-1, pp. 74-76) and in his Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court (Doc. 10-1, pp. 166-168), Ragland challenged the sufficiency of the evidence with respect to his aggravated burglary conviction.  He also challenged the sufficiency of the evidence with respect to his convictions for aggravated robbery, murder, and felonious assault (Doc. 10-1, pp. 76, 168).  In his federal habeas petition, Ragland only presents supporting facts relating to his aggravated burglary conviction.  Doc. 1, p. 5.  Since Ragland has not articulated a sufficiency of the evidence argument with respect to his other convictions, any such arguments are waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).

*Sufficiency standard*

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by AEDPA.  *Id.*

As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d at 205.  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 at 319.  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this determination, a court does not reweigh the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

The second layer of deference goes to the state appellate court.  Even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

*Application of sufficiency standard to Ground One*

Ragland claims that there was insufficient evidence to convict him of aggravated burglary because aggravated burglary requires a trespass and there was insufficient evidence showing that a trespass occurred.[8]  Doc. 1, p. 5.  In support of his argument, Ragland contends that the evidence does not show that he or the other individual entering the residence identified themselves as the son of one of the victims.  Doc. 1, p. 5.  He also argues that one of the victims opened the door for him and there was no indication that any of the victims requested that he or the other individual leave the premises.  Doc. 1, p. 5.

In reviewing Ragland's sufficiency of the evidence claim with respect to the aggravated burglary conviction, the Fifth District Ohio Court of Appeals stated:

---

[8] The Aggravated Burglary statute provides:

   (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

   (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

   (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

O.R.C. § 2911.11(A).

{¶ 35} Appellant, in his first assignment of error, argues that his convictions for aggravated burglary, felonious assault, murder, and aggravated robbery were against the manifest weight and sufficiency of the evidence.[9] We disagree.

{¶ 36} In *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* at paragraph two of the syllabus.

* * *

{¶ 38} Appellant initially argues that his conviction for aggravated burglary in violation of R.C. 2911.11(A)(1) or (A)(2) was against the manifest weight and sufficiency of the evidence because either there was no evidence, or there was legally insufficient evidence, regarding trespass.

{¶ 39} R.C. 2911.11 states, in relevant part, as follows: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 40} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶ 41} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 42} Appellant, in support of his argument, argues that there was no evidence that either appellant or William Ferguson identified themselves as Marlo Morales' son, that Morales opened the door to them, and that there was no indication that they were ever requested to leave.

{¶ 43} However, although appellant may have had consent to enter Sankey's home, once he committed an act of violence against Sankey or other inhabitants of the home, the consent was revoked and appellant became a trespasser. See

---

[9] As noted above, in his federal habeas petition before this Court, Ragland only presents supporting facts relating to his argument that his aggravated burglary conviction is not supported by sufficient evidence.  Doc. 1, p. 5. Accordingly, arguments, if any, with respect to his other convictions are waived.

*State v. Cutts,* Stark App. No.2008 CA 000079, 2009–Ohio–3563 at paragraph 181. Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser and can be culpable for aggravated burglary. See, e.g., *State v. Steffen* (1987), 31 Ohio St.3d 111, 115, 509 N.E.2d 383. Moreover, we note that Daniel Sankey and Denielle Sankey testified that someone identified himself as "Nardo", which is the name of Morale's son while William Ferguson testified that appellant was the one who identified himself as "Nardo." Thus, there was testimony that appellant used deception to enter the Sankey home.

{¶ 44} We find, therefore, that appellant's conviction for aggravated burglary is not against the manifest weight or sufficiency of the evidence.

*State v. Ragland*, 2011 WL 1848902, *5-6.  The state court applied the correct standard under

*Jackson* when assessing Ragland's sufficiency of the evidence claim. *Id.*  at *5, ¶36 (Ohio App.

May 9, 2011) (indicating that "[t]he relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.").   Moreover, the state court's

determination that a rational trier of fact could find Ragland guilty of aggravated burglary was

not unreasonable.

Evidence submitted to the jury included evidence that Ragland used the name of Marlo

Morales' son, "Nardo," to attempt to gain entry into the home.  Doc. 10-3, pp. 43, 144, 175.

Thus, there was evidence that Ragland used deception to gain entry to the home and sufficient

evidence to show that a trespass occurred.  *See* O.R.C. § 2911.11(A) ("No person, by force,

stealth, or *deception*, shall trespass . . .) (emphasis supplied).   Additionally, the evidence

submitted included that, once inside the home of Daniel Sankey (Doc. 10-3, p. 41), Ragland hit

Daniel Sankey on the head with his gun and also shot him (Doc. 10-3, pp. 48-49, 146-147, 183-

184, 195-197).   Thus, even if the evidence could be said to show that Ragland initially received

consent to enter the home, Ragland's acts of violence after entering the home constituted

sufficient evidence to show revocation of his privilege, if any, to enter the home.  *See Saxton v.*

14

*Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) (applying *State v. Steffen*, 31 Ohio St. 3d 111, 509 N.E.2d 383, 388-89 (1987) to find a revocation of privilege based on the commission of a violent act after being given permission to enter the victim's home).

Considering the evidence presented to the jury, a rational trier of fact could have found that Ragland trespassed and that the prosecution had proven the essential elements of aggravated burglary beyond a reasonable doubt.  *See Jackson*, 443 U.S. 307.  Thus, federal habeas relief is not warranted based on Ragland's sufficiency of the evidence claim.  Further, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, federal habeas relief is not warranted based on Ragland's sufficiency of the evidence claim because the court of appeals' determination that a rational trier of fact could find Ragland guilty beyond a reasonable doubt was not unreasonable.  *See Brown*, 567 F.3d at 205*; see also White*, 602 F.3d at 710.

Accordingly, the undersigned recommends that the Court deny Ragland's sufficiency of the evidence claim in Ground One.

### b.  Manifest weight of the evidence claim

In the Ohio Court of Appeals (Doc. 10-1, pp. 74-76) and in his Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court (Doc. 10-1, 166-168), Ragland argued that his convictions were against the manifest weight of the evidence.[10] Ragland's manifest weight of the evidence claim is not cognizable in this federal habeas action.  "A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding," *Brown v. Moore*,

---

[10] As with his sufficiency of the evidence claim, in his federal habeas petition, Ragland only presents supporting facts relating to his aggravated burglary conviction.  Doc. 1, p. 5.

2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  Therefore, the undersigned recommends that the Court dismiss Ground One with respect to Ragland's manifest weight of evidence claim.

### 2.  Ground Two

**Ground Two:** The trial court plainly erred in imposing maximum prison terms for petitioner's separate convictions.

<u>**Supporting Facts:**</u> The petitioner was convicted of one count of murder, one count of burglary, four counts of Felonious Assault, all of which contained firearm specifications and one count of having weapons under disability.  The imposition of the maximum sentence on each of the convictions was without basis or justification and thereby warrants resentencing.

Doc. 1, p. 6.

Ragland raised his Ground Two claim in the Ohio Court of Appeals (Doc. 10-1, p. 77) as his second assignment of error and in his Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court as his second proposition of law (Doc. 10-1, p. 169).

In Ground Two, Ragland does not allege a federal constitutional claim or argue that the state court's determination was contrary to or an unreasonable application of clearly established federal law.  Rather, he challenges the state court's application of Ohio's sentencing laws.

"A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) (citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003); *Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003); *Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991).  Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle*, 502 U.S. at 68.

Since Ragland's challenge to the application of Ohio's sentencing laws is not cognizable in federal habeas review, the undersigned recommends that the Court dismiss Ground Two.

### 3.  Ground Three

**Ground Three:** The trial court committed plain error when it entered a judgment of conviction and sentenced the petitioner on allied offenses of similar import in violation of R.C. 2941.25 and the state and federal prohibitions against the imposition of multiple punishments as set forth in the Double jeopardy clause.

**<u>Supporting Facts</u>:** The indictment filed in this case alleges that the murder occurred in the course of: Aggravated Burglary (as set forth in Count 2); Aggravated Robbery (as set forth in counts 3,4,5); and Felonious Assault (as set forth in count 7).  The Murder allegation is dependent upon those independent allegations and fails without them.  The petitioner contends that his conduct, as convicted, constituted allied offenses of similar import.  The petitioner's convictions occurred, as documented by the indictment and Bill of Particulars, concurrently and during the same alleged course of action.  Accordingly, the underlying offenses are also allied and of similar import, requiring merger and/or concurrent sentences.

Doc. 1, p. 8.

Ragland raised his Ground Three claim in the Ohio Court of Appeals (Doc. 10-1, pp. 78-80) as his third assignment of error and in his Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court as his third proposition of law (Doc. 10-1, pp. 170-172).

Ragland claims that his convictions and sentencing for Murder, Aggravated Burglary, Aggravated Robbery, and Felonious Assault violated the Double Jeopardy Clause and Ohio's allied offenses of similar import statute, O.R.C. § 2941.25.[11]

---

[11] Ohio's allied offenses statute provides:

As discussed, a federal habeas court may not consider a claim asserting a violation of an Ohio statute.   Thus, to the extent that Ragland contends that his convictions and sentence violate O.R.C. § 2941.25, his claim is not cognizable on federal habeas review.

To the extent that Ragland claims that his convictions and sentence violates the Double Jeopardy Clause of the Fifth Amendment, as discussed more fully below, is claim is without merit.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . .'  The clause was incorporated against the states through the enactment of the Fourteenth Amendment."  *Person v. Sheets*, 527 Fed. Appx. 419, 423 (6th Cir. 2013) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)).  "[A] defendant may not be subject to multiple punishments unless the state legislature intended to so punish." *Person*, 527 Fed. Appx. at 423 (citing *Missouri v. Hunter*, 459 U.S. 359, 367-368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).  "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  *Duncan v. Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations omitted)).

As stated by the Sixth Circuit:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25.

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180. The *Blockburger* test, however, is a "rule of statutory construction," *Albernaz,* 450 U.S. at 340, 101 S.Ct. 1137 (quoting *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)), "not a constitutional test in and of itself," *McCloud v. Deppisch,* 409 F.3d 869, 875 (7th Cir.2005), *as quoted in Palmer v. Haviland,* 273 Fed.Appx. 480, 486 (6th Cir.2008) (unpublished); *see Hunter,* 459 U.S. at 368, 103 S.Ct. 673 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *697 Johnson,* 467 U.S. at 499 n. 8, 104 S.Ct. 2536; *accord Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673.

*Volpe v. Trim*, 708 F.3d 688, 696-697 (6th Cir. 2013).

Thus, "[i]n contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Person*, 527 Fed. Appx. at 423 (citing *Volpe*, 708 F.3d at 697). "Moreover, '[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.'" *Volpe*, 708 F.3d at 697 (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal court must defer to that determination." *Id.* (citing *Banner*, 886 F.2d at 780).

In Ohio, to determine whether the legislature intended to authorize cumulative punishments, courts apply O.R.C. § 2941.25 (Ohio's multiple counts statute). *Volpe*, 708 F.3d at 697. Here, the Fifth District Ohio Court of Appeals applied and analyzed Ragland's multiple

19

counts and sentence under O.R.C § 2941.25.  As set forth above, that analysis is relevant to this

Court's consideration of Ragland's Double Jeopardy Clause claim.  The Court of Appeals stated:

> {¶ 65} Appellant, in his third assignment of error, argues that the trial court committed plain error when it failed to merge the offenses of aggravated burglary, aggravated robbery, felonious assault and felony murder. Appellant alleged that the offenses of aggravated burglary, aggravated robbery and felonious assault were the underlying predicate offenses for the felony murder charge and that, therefore, they are allied offenses of similar import to felony murder.
>
> {¶ 66} R.C. 2941.25 states as follows: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> {¶ 67} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
>
> {¶ 68} Recently, the Ohio Supreme Court, in *State v. Johnson,* 128 Ohio St.3d 1405, 2010–Ohio–6314, —— N.E.2d ——, modified the test for determining whether offenses are allied offenses of similar import. In *Johnson,* the Ohio Supreme Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson,* supra.
>
> {¶ 69} In the case sub judice, appellant was convicted of felony murder in violation of R.C. 2903.02(B). R.C. 2903.02(B) states as follows: "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The indictment in the case sub judice lists the offenses of violence as aggravated burglary in violation of R.C. 2911.11(A)(1) or (A)(2), aggravated robbery in violation or R.C. 2911.01(A)(1) or (A)(3) and felonious assault in violation of R .C. 2903.11(A)(1) or (A)(2).

{¶ 70} In addition, appellant was separately indicted on aggravated burglary, aggravated robbery (4 counts) and felonious assault. And, he was convicted of each of those.

{¶ 71} The prosecution can elect any of the above three felonies as charged as the predicate offense.[4] Appellant was convicted of Count Three, which was aggravated robbery with Daniel Sankey as the victim. The evidence at trial demonstrated that after Daniel Sankey did not comply with appellant's demands appellant hit him in the head with a gun and then shot him in the leg. As a result of shooting Daniel Sankey, appellant shot and killed H. Thus, there were separate victims with respect to the aggravated robbery and the felony murder. While Daniel Sankey was the victim of the aggravated robbery, H was the victim with respect to the felony murder. Because there were two separate victims, appellant's conduct constituted two offenses of dissimilar import. See *State v. Maddern,* Stark App. No.1999CA00273, 2000 WL 700307, citing to *State v. Jones* (1985), 18 Ohio St.3d 116, 480 N.E.2d 408. In *Jones,* two passengers in the defendant's automobile were killed as a result of defendant's reckless operation of his vehicle. The Supreme Court found the defendant's conduct constituted two offensives of dissimilar import. The "import" being each person killed. Therefore, the Supreme Court concluded, the defendant was lawfully convicted and sentenced on both counts.

> [Footnote 4: See *State v. Kinney,* (Aug.21, 1998), Lake App. No. 97–L–034, 1998 WL 637515. The appellant, in such case, was convicted of burglary in violation of R.C. 2911.12. Such statute prohibits the entry of an occupied structure by force, stealth or deception. On appeal, he argued that the evidence was insufficient because no force was shown. The Court of Appeals said that the state could prove the charge with evidence as to any of the three concepts and that the appellant had not asked the Court to order the state to elect a theory upon which to proceed at trial.]

{¶ 72} Based on the foregoing, we find that the predicate offense of aggravated robbery was not an allied offense in relation to felony murder. Because aggravated burglary and felonious assault were not the predicate offenses to felony murder, in the case sub judice they are not subject to merger with the felony murder charge.

{¶ 73} As is stated above, appellant was convicted of four counts of aggravated robbery in violation of R.C. 2911.01(A)(1) or (A)(3). We find that such offenses are not allied offenses of similar import because they were not committed by the same conduct. All of the aggravated robbery counts involved different victims and different conduct. Testimony was adduced at trial that appellant initially approached Daniel Sankey and made demands and that he later separately approached Marlo Morales, Danielle Sankey and Jason Nelson demanding

money. Thus, the four counts of aggravated robbery are not allied offenses of similar import because each was committed with a separate animus.

{¶ 74} The next issue for determination is whether or not the offenses of aggravated burglary and felonious assault are allied offenses of similar import. Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1) or (A)(2). Such section states as follows: "A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 75} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶ 76} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 77} Appellant also was convicted of felonious assault in violation of R.C. 2903.11(A)(1) or (A)(2). Such section states as follows: "A) No person shall knowingly do either of the following:

{¶ 78} "(1) Cause serious physical harm to another or to another's unborn;

{¶ 79} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 80} We find that the aggravated burglary and felonious assault offenses are not allied offenses of similar import because the offenses were committed separately with a separate animus. The aggravated burglary was committed when appellant, under the guise of being "Nardo", used deception to gain entrance to appellant's home with the intent to commit a robbery and while having a deadly weapon under his control. The felonious assault did not occur until later when appellant hit Daniel Sankey in the head after demanding money and drugs and then shot Daniel Sankey in the leg. The aggravated burglary, therefore, was complete before the felonious assault took place. The two, therefore, involved separate conduct and a separate animus and are not allied offenses of similar import.

{¶ 81} We further find that aggravated robbery and felonious assault are not allied offenses of similar import. Appellant committed the felonious assault when he knowingly caused serious physical harm to Daniel and/or H Sankey or when he caused or attempted to cause physical harm to either of them by means of a firearm. He committed the offense of aggravated robbery when he approached his victims and demanded money while displaying his handgun. We find that the offenses were committed with a separate animus.

{¶ 82} Finally, the question that must be addressed is whether or not aggravated burglary and aggravated robbery are allied offenses of similar import. Appellant was convicted of aggravated burglary in violation of R.C. 2911.01(A)(1) or (A)(2). R.C. 2911.11(A) states, in relevant part, as follows: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 83} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶ 84} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 85} In order to commit the offense of aggravated burglary, one does not have to actually commit any criminal offense. Rather, one has to trespass with purpose to commit a criminal offense. Thus, appellant committed aggravated burglary when he used deception to gain entry into appellant's home with the purpose to commit a criminal offense therein while having a deadly weapon under his control.

{¶ 86} In contrast, R.C. 2911.01, the aggravated robbery statute, states as follows: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 87} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; ...

{¶ 88} "(3) Inflict, or attempt to inflict, serious physical harm on another."

{¶ 89} In the case sub judice, appellant committed the aggravated robberies when he approached the four separate victims individually and demanded money and/or drugs. The aggravated burglary and the aggravated robbery involved separate conduct.

{¶ 90} Based on the foregoing, we find that aggravated burglary and aggravated robbery are not allied offenses of similar import.

{¶ 91} In short, we find that the trial court did not err in sentencing appellant because the offenses were not allied offenses of similar import.

{¶ 92} Appellant's third assignment of error is, therefore, overruled.

*Ragland*, 2011 WL 1848902, * 9-12.

The foregoing detailed analysis by the state court of appeals reflects its determination that the offenses for which Ragland was convicted were not allied offenses of similar import and/or that the offenses involved separate conduct or separate animus.[12]  Accordingly, the state court of appeals concluded that the offenses were not subject to merger and the trial court's sentence was not in error.

As discussed above, "with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Volpe*, 708 F.3d at 696 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).  Here, Ragland has failed to show that the state court erred in applying O.R.C. § 2941.25 and in concluding that the offenses were not allied offenses of similar import and/or that the offenses involved separate conduct or separate animus.  Moreover, he has failed to demonstrate that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law.  Thus, federal habeas relief is not warranted based on the trial court's imposition of cumulative sentences.

Based on the foregoing, the undersigned recommends that the Court dismiss Ground Three to the extent that Ragland challenges the state court's application of state law and deny Ground Three to the extent Ragland claims a violation of federal constitutional law.

---

[12] For instance, as reflected in the state court of appeals' decision, there were separate victims with respect to the aggravated robbery and felony murder charges and thus the offenses were of dissimilar import.  *Ragland*, 2011 WL 1848902, * 10.  Also, for example, the state court of appeals concluded that there was separate conduct and/or separate animus with respect to aggravated burglary, aggravated robbery and felonious assault.  *Id*. at * 11-12.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS**: (1) the manifest weight of the evidence claim in Ground One; (2) Ground Two in its entirety; and (3) Ground Three to the extent that it includes a state law claim.  Also, the undersigned recommends that the Court **DENY**: (1) the sufficiency of the evidence claim in Ground One; and (2) Ground Three to the extent that it includes a federal constitutional claim.


Dated: March 16, 2015

Kathleen B. Burke
United States Magistrate Judge


## **<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).